## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL CODA, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY POWER CHOICE, LLC.,<br><br>Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Michael Coda ("Plaintiff") brings this action against Constellation Energy Power Choice, LLC., ("Defendant" or Constellation), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

### Nature of the Case

1. This action seeks to redress Defendant's deceptive pricing practices that have caused thousands of consumers to pay considerably more for their electricity than they should otherwise have paid.

2. Defendant engages in a classic bait-and-switch deceptive marketing scheme aimed at consumers hoping to save on the cost of electricity. It lures consumers into switching by offering an initial rate that is fixed for a limited number of months and initially lower than local utility rates for electricity. Once that initial rate expires, unless the customer signs up for another fixed rate, Defendant switches its customers over to a variable rate established each month "based upon such factors as electricity market pricing, transmission costs, utility charges and other market related

factors." A reasonable consumer thus expects that after the initial rate expires, he or she will receive a variable rate that reflects the market rates for electricity, including the rates other market participants, such as local utilities, charge and the wholesale cost of electricity.

3. But what Constellation does not inform consumers is that its variable rate is substantially higher than the initial teaser rate and that it does not reflect changes in the market rates for electricity because Constellation's rate is often significantly higher than the rates local utilities charge and most other ESCOs charge (including Constellation's own fixed rates). Constellation just raises the rate as high as it thinks it can without causing its customers to quit and it leaves the rate high no matter what happens with its competitors' rates or the wholesale market rates. No reasonable consumer would expect that there would be no connection between electricity market rates and Constellation's variable rates.

4. As a result, consumers are misled and deceived, and are being fleeced millions of dollars in exorbitant charges for electricity.

5. This suit is brought pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*. and common law on behalf of a class of consumers who purchased electricity on a variable rate from Defendant from May 8, 2011, to the present. It seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

**Parties**

6. Plaintiff Michael Coda is a citizen of New Jersey residing in Ho-Ho-Kus, New Jersey. Mr. Coda was a Constellation customer for electricity from December 2011 to January 2016. As a result of Defendant's deceptive conduct, he incurred excessive charges for electricity.

7. Defendant Constellation Energy Power Choice, LLC., formerly known as MXenergy Electric, Inc. ("MXenergy"), is a Delaware corporation with its corporate headquarters

located in Baltimore, Maryland. It is a retail energy supplier, providing electricity services to residential customers in the United States, including New Jersey where it is currently licensed to operate. It has thousands of customers in New Jersey and elsewhere, and tens of millions of dollars in revenues.

### Jurisdiction & Venue

8. Defendant's status as limited liability company renders it an "unincorporated association" pursuant to the Class Action Fairness Act ("CAFA"), and under CAFA, an unincorporated association is a citizen of the state where it has its principal place of business and the state under whose laws it is organized. *See* 28 U.S.C. § 1332(d)(10).

9. Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy is in excess of $5 million.

10. This Court has personal jurisdiction over Defendant because Defendant is licensed to do business and does business in and throughout the State of New Jersey through the promotion, sale, marketing and distribution of its products, and the wrongful acts alleged in this Complaint were committed in New Jersey.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2), because (i) Defendant's contacts are sufficient to subject it to personal jurisdiction in this District and (ii) a substantial part of the events and omissions giving rise to the claims occurred in this District. Furthermore, Mr. Coda resides in this District.

### Operative Facts

12. In 1999, the electric utility industry within the State of New Jersey was restructured. Among the goals of the reorganization were increased competition and deregulation within the industry, with an eye towards achieving greater consumer choice and an overall reduction of

3

energy rates. As a result, the State's electric industry is open to competition, and consumers may choose their supplier of electricity.

13. The new energy suppliers, who compete against local utilities such as Public Service Electric and Gas Company ("PSE&G"), are known as energy service companies, or "ESCOs." While ESCOs supply the power, the delivery of electricity to homes remains the job of the local utilities.

14. As part of the deregulation plan, ESCOs, such as Defendant, do not have to file with the New Jersey Board of Public Utilities the electricity rates they charge or the method by which they set their rates.

15. However, Defendant takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge consumers exorbitant rates for electricity. In fact, Defendant's rates are substantially higher than rates of other ESCOs or local utilities and wholesale market rates.

**Constellation Charges Deceptively High Electricity Rates**

16. Constellation engages in a classic bait-and-switch deceptive scheme. Constellation, operating as MXenergy, lured Mr. Coda into switching to its electricity supply service by offering him a fixed rate of $0.0999 per kilowatt hour (kWh) fixed for 12 months. That rate was lower than his then-current rate with his local utility (PSE&G). Thus, Mr. Coda accepted the offer. After 12 months, Constellation switched Mr. Coda to a variable rate that was always higher than the initial rate and often substantially higher than the rates PSE&G and other electricity retailers charged.

17. After Mr. Coda agreed to enroll in Constellation's electricity service, Constellation provided him its standard contract, denominated "Our Agreement." The contract provided for a rescission period during which it was not effective and described how a variable rate would be

4

established. Thus, the contract constituted a representation as to what rate Mr. Coda would receive when he was placed on the monthly variable rate, should he accept the Agreement.

18. The contract provided that after the expiration of the initial fixed rate, absent contract renewal on the same or different conditions, the contract would "continue on a month-to-month basis with a Variable Monthly Rate." Constellation also represented that the variable rate would be established each month "based upon such factors as electricity market pricing, transmission costs, utility charges and other market related factors." A reasonable consumer would expect that the rate would be based on electricity market pricing and other market related factors, namely the rates charged by other ESCOs and the local utility, as well as the wholesale market cost of electricity.

19. But such a consumer would be wrong because Constellation's variable rate is not based on the market price of electricity. It is often substantially higher than other rates available to consumers in the market and does not reflect changes in the rates of its competitors, including the PSE&G. The variable rate also does not reflect changes in wholesale cost of electricity.

20. Mr. Coda was a Constellation electricity customer from December 13, 2011 to January 14, 2016. During this period, Constellation's rate increased by 50% from $0.0999 to $0.1599 kWh, while PSE&G's rates, *i.e.*, the rates PSE&G would have charged Mr. Coda had he bought electricity from PSE&G, increased by only 3.81% from $0.1154 to $0.1198 kWh.

21. Constellation's variable rate always exceeded Mr. Coda's initial fixed rate. It was also significantly higher than PSE&G's rate every month from August 2013 until Mr. Coda terminated his Constellation service in January 2016. Moreover, Constellation's variable rates were also substantially higher than electricity rates other ESCOs charged, including its own fixed rates.

22. A reasonable consumer would understand that the price the local utility charges and market rates are part of electricity market pricing and other market related factors and that a price based on electricity market pricing and other market related factors would be competitive with the price charged by the local utility and other retail market rates. But Constellation's variable rate was not competitive with PSE&G's rate.

23. A reasonable consumer would also understand and expect that electricity market pricing and other market related factors for retail electricity would include the wholesale price for electricity, *i.e.*, the price that Constellation pays for the electricity it in turn supplies to its retail customers.

24. However, Constellation's variable rate rarely varies with wholesale market prices. One indicator of market prices is the locational marginal price ("LMP"), which is a benchmark used to establish the price of energy purchases and sales in the PJM wholesale electricity market (which includes New Jersey).

25. The disconnect between changes in the PJM and Constellation's variable rate demonstrates that Constellation's rates were not based on electricity market pricing and other market related factors, in particular, the wholesale cost of electricity. For example, from July to November 2013, the weighted LMP declined from $0.0593 to $0.0369 kWh, a *reduction* of about 38%. Yet during that same period, Constellation's rate jumped from $0.1099 to $0.1460 kWh, an *increase* of about 33%. Similarly, from February to May 2014, the weighted LMP declined from $0.0913 to $0.0465 kWh, a *reduction* of about 50%. Yet during that same period, Constellation's variable rate *increased* by about 12% from $0.1427 to $0.1599 kWh. From February to May 2015, the weighted LMP *decreased* by about 73% from $0.1076 to $0.0288 kWh, while Constellation's rate remained unchanged at $0.1499 kWh. Then, from September 14, 2015 to January 14, 2016, Constellation's rate stayed at $0.1499, although the weighted LMP dropped by nearly 36% from

$0.0317 to $0.0203 kWh. No reasonable consumer who is told that their variable rate for electricity is based on electricity market pricing and other market related factors would expect that Constellation's rate would increase or remain steady despite decreases in the wholesale price of electricity.

26. All that Constellation offers customers is electricity delivered by local utilities, a commodity that has the exact same qualities as electricity supplied by other ESCOs or local utilities. Other than potential price savings, Constellation offers nothing of value that other ESCOs or local utilities do not offer.

27. The transmission costs and utility charges Constellation incurs in supplying electricity do not substantially change over time and do not account for a substantial portion of Constellation's electricity rates, and any changes to these costs do not account for Constellation's exorbitant rates.

28. Constellation's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price. No reasonable consumer who knows the truth about Constellation's exorbitant rates would choose Constellation as an electricity supplier. Other than potential price savings, there is nothing to differentiate Constellation from other ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for electricity supply with Constellation.

29. Constellation knows full well that it charges variable rates that are unconscionably high, and the misrepresentations it makes with regard to the rates being based on electricity market pricing and other market related factors were made for the sole purpose of inducing customers to purchase electricity from Constellation so that it can reap outrageous profits to the direct detriment of consumers without regard to the consequences high utility bills cause such consumers.

Therefore, Constellation's actions were actuated by actual malice or accompanied by wanton and willful disregard for the well-being of consumers.

## Class Action Allegations

30. Plaintiff brings this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all Constellation customers who paid Constellation's variable rate for electricity at any time between May 15, 2011 and the present.

31. Excluded from the Class is Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

32. This action is brought as a class action for the following reasons:

    a. The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

    b. There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

        i. whether Defendant violated N.J.S.A. 56: 8-1 *et seq.*;

        ii. whether Defendant breached its contracts with consumers by charging variable rates not based on electricity market pricing and other market related factors;

        iii. whether Defendant breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, *i.e.*, to price gouge or upset the reasonable expectation of consumers that Constellation variable rates would be competitive and reflect changes in electricity market pricing, including the wholesale price of electricity;

        iv. whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

    v. whether Defendant should be enjoined from continuing to charge exorbitant rates based on factors other than electricity market pricing and other market related factors.

  c. The claims asserted by Plaintiff are typical of the claims of the members of the Class;

  d. Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

  e. Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

  f. Defendant has acted on grounds that apply generally to the Class, namely representing that its variable rates are based on market conditions when its rates are in fact always substantially higher, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Class as a whole;

  g. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

    i. Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

    ii. It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

    iii.  When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

    iv.  A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

    v.  The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

    vi.  Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

33. Defendant's violations of N.J.S.A. 56: 8-1 *et seq*. and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

### FIRST CAUSE OF ACTION
### (Violation of N.J.S.A. 56: 8-1 *et seq*.)

34. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

35. The Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

36. Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the rates charged for electricity, as described above, constitute affirmative misrepresentations in connection with the marketing, advertising, promotion, and sale of electricity in violation of the Consumer Fraud Act.

37. Defendant's false, deceptive, and misleading statements and omissions would have been material to any potential consumer's decision to purchase electricity from Defendant.

38. Defendant also failed to inform customers that its rates are substantially higher than those based on electricity market pricing and do not reflect changes in market prices and the wholesale price of electricity. That information would have been material to any consumer deciding whether to purchase electricity from Defendant.

39. Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

40. Plaintiff and the other members of the Class entered into agreements to purchase electricity from Defendant and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud Act.

41. As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable monetary loss based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate based on electricity market pricing and other market related factors, or had they not switched to Defendant from their previous supplier.

42. Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase electricity from Defendant if the true facts concerning its rates had been known.

43. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit. N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

44. Defendant knows full well that it charges variable rates that are unconscionably high, and the misrepresentations it makes with regard to the rates being based on electricity market pricing and other market related factors were made for the sole purpose of inducing consumers to purchase electricity from it so it can reap outrageous profits to the direct detriment of New Jersey consumers and without regard to the consequences high utility bills cause such consumers. Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class. Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

45. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

46. Plaintiff and the Class entered into valid contracts with Defendant for the provision of electricity supply.

47. Pursuant to that contract, Constellation agreed to charge a variable rate for electricity "based upon such factors as electricity market pricing, transmission costs, utility charges and other market related factors."

48. Pursuant to the contract, Plaintiff and the Class agreed to pay Defendant's rate, and they did so.

49. However, Defendant failed to perform its obligations under the contract because it charged a variable rate not based on electricity market pricing, including rates charged by its competitors or the wholesale price of electricity.

50. Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was higher than it would have been had Defendant based on market prices, including competing rates and the wholesale price of energy.

51. By reason of the foregoing, Defendant is liable to Plaintiff and the rest of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## THIRD CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith & Fair Dealing)

52. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

53. Every contract contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

54. Under its agreements, Defendant had unilateral discretion to set the variable rate for electricity based on electricity market pricing and other market related factors, including competing rates and the wholesale price of electricity.

55. Plaintiff reasonably expected that Defendant would attempt to make a reasonable profit in setting its rates and selling electricity to consumers. Nonetheless, Plaintiff reasonably expected that the variable rates for electricity would, notwithstanding Defendant's profit goals, reflect market prices, including competing rates and the wholesale price of electricity, and that Defendant would refrain from price gouging. Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant.

56. Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and

frustrate Plaintiff and other Class members' reasonable expectations that the variable rate for electricity would reflect market prices, including competing rates and the wholesale price of electricity.

57. As a result of Defendant's breach, Defendant is liable to Plaintiff and other Class members for actual damages in an amount to be determined at trial and attorney's fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendant as follows:

1. Certifying this action as a class action, with a class as defined above;

2. On Plaintiff's First Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered, trebled, and granting appropriate injunctive relief;

3. On Plaintiff's Second Cause of Action, awarding against Defendant damages that Plaintiff and the other members of the Class have suffered as a result of Defendant's actions;

4. On Plaintiff's Third Cause of Action, awarding against Defendant damages that Plaintiff and other members of the Class have suffered as a result of Defendant's actions;

5. Awarding Plaintiff and the Class punitive damages;

6. Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

7. Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: May 15, 2017
Roseland, New Jersey

         **MAZIE, SLATER, KATZ & FREEMAN, LLC**

     By: */s/ Matthew R. Mendelsohn*
       Matthew R. Mendelsohn
       103 Eisenhower Parkway
       Roseland, NJ 07922
       (973) 228-9898
       Fax: (973) 328-0303
       mmendelsohn@mskf.net

       Greg Blankinship (*pro hac vice forthcoming*)
       **FINKELSTEIN, BLANKINSHIP,**
       **FREI-PEARSON & GARBER, LLP**
       445 Hamilton Avenue, Suite 605
       White Plains, New York 10601
       (914) 298-3281
       Fax: (914) 824-1561
       gblankinship@fbfglaw.com

       *Attorneys for Plaintiff and Putative Class*