UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL CODA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CONSTELLATION ENERGY POWER CHOICE, LLC,<br><br>*Defendant.* | Civil Action No. 17-3437 (JMV) (MF)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiff alleges that Defendant overcharged him for electricity. Currently pending before the Court is a motion to dismiss the class action Complaint filed by Defendant Constellation Energy Power Choice, LLC ("Constellation" or "Defendant"). D.E. 15. Plaintiff Michael Coda alleges that Defendant charged him too much for electricity in violation of the parties' contract. The contract promised a fixed rate for 12 months followed by a variable rate unless Plaintiff opted for another fixed-rate agreement or canceled. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

---

[1] The following briefs were submitted in connection with this motion: Brief in Support of Defendant's Motion to Dismiss, D.E. 15, hereinafter "Def. Br."; Plaintiff's Brief in Opposition, D.E. 18, hereinafter "Opp."; Defendant's Reply Brief, D.E. 23, hereinafter "Reply Br."

## I. Factual Background & Procedural History

The following facts are taken from Plaintiff's Complaint. D.E. 1 ("Compl."). In 1999, New Jersey restructured the electric utility industry, allowing consumers more options in their energy providers. Compl. at ¶ 12. Defendant Constellation is an energy service company ("ESCO") that supplies power[2] to residents in New Jersey. *Id.* at ¶ 13. Defendant[3] offered Plaintiff a 12-month fixed rate for electricity, at a rate of $0.0999 per kilowatt hour (kWh), which he accepted in late 2011. *Id.* at ¶ 16. Plaintiff's contract ("Agreement")[4] stated that after the initial 12-month period, Defendant would continue to charge Plaintiff a "Variable Monthly Rate" "based upon such factors as electricity market pricing, transmission costs, utility charges and other market related factors." *Id.* at ¶ 18. Plaintiff also had the option of cancelling the Agreement after the first year or seeking another fixed-rate agreement. Agreement at § 3. The Agreement stated that Defendant "offers several different rate plans for buying electricity which may be higher or lower than PSE[&]G's posted rate." *Id.* at § 4.

Plaintiff was a Constellation customer from December 13, 2011 to January 14, 2016. *Id.* at ¶ 20. After the initial year of service, Plaintiff alleges that the variable rate "always exceeded [Plaintiff's] initial fixed rate," and was "significantly higher than Public Service Enterprise

---

[2] Local utility companies are still responsible for "delivery of electricity to homes." Compl. at ¶ 13.

[3] The offer was made by Defendant's predecessor, MXenergy. Compl. at ¶ 16. For simplicity, the Court merely refers to Defendant in the Opinion.

[4] Plaintiff did not annex a copy of the Agreement to the Complaint, but Defendant did as an exhibit to its motion to dismiss. *See* D.E. 15-3. The Court may consider the Agreement in deciding the motion. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a district court can consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). No party disputes the authenticity of the Agreement.

2

Group's ("PSE&G") rate every month from August 2013" through January 2016. *Id.* at ¶ 21. Plaintiff describes this as a "classic bait-and-switch" scheme. *Id.* at ¶ 16. He further alleges that "[a] reasonable consumer would expect the [variable] rate would be based on electricity market pricing and other market related factors, namely the rates charged by other ESCOs, and the local utility, as well as the wholesale market cost of electricity." *Id.* at ¶ 18. Plaintiff states that Constellation instead charged "unconscionably high" prices after the first year based on factors a reasonable consumer would not predict. *Id.* at ¶¶ 28-29.

The putative class in the Complaint is defined as "all Constellation customers who paid Constellation's variable rate for electricity at any time between May 15, 2011 and the present." *Id.* at ¶ 30. The Complaint lists three counts: (1) violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"); (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. *Id.* at ¶¶ 34-57. Plaintiff filed the Complaint on May 17, 2017. D.E. 1. Defendant filed the instant motion on July 14, 2017, D.E. 15, which Plaintiff opposed. D.E. 18. Defendant submitted a reply, D.E. 23, and Plaintiff further submitted supplemental authority, D.E. 26, to which Defendant responded. D.E. 27.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that

3

discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

**III.    Analysis**

At the outset, the Court notes that as to actual impropriety, the Complaint contains many pejorative descriptions and conclusions. *See, e.g.*, Compl. at ¶ 1 ("bait-and-switch"); ¶ 4 ("fleeced," "exorbitant"), ¶ 15 ("exorbitant"), ¶ 16 ("bait-and-switch," "lured"), ¶ 28 ("exorbitant"), and ¶ 29 ("outrageous profits"). It also often provides words of comparison, without further and necessary explanation. *See, e.g., id.* at ¶ 3 ("substantially higher," "significantly higher"), ¶ 15 ("substantially higher"), ¶ 16 ("substantially higher"), and ¶ 21 ("significantly higher," "substantially higher"). As to factual allegations to support the alleged wrongdoing, the Complaint is rather sparse. There are two paragraphs comparing Defendant's rates with those of PSE&G, yet even one of those paragraphs merely states that Defendant's rates were "substantially" or "significantly" higher than those of PSE&G. *Id.* at ¶¶ 20-21. The most detailed allegations concern an analysis of the wholesale cost of electricity based on the "weighted" locational marginal price ("LMP"), but even this analysis fails to compare Defendant's rates to those of other ESCOs. *Id.* at ¶¶ 24-25. In fact, Plaintiff claims that no reasonable consumer would

4

expect Defendant's electric rates to rise or even remain "steady" because the wholesale costs purportedly dropped. *Id.* at ¶ 25. Yet, this allegation ignores the fact that during the same period PSE&G's rates *increased*, according to Plaintiff, albeit at a lesser percentage than Defendant's. *Id.* at ¶ 24.

Plaintiff's Complaint turns on the language in the Agreement as to the factors that would be considered in setting the variable rate: "factors [such] as electricity market pricing, transmission costs, utility charges and other market related factors" ("Variable-Rate Factors"). This language is the basis for all three of the Complaint's counts. The language does not indicate that the pricing would be competitive or that it would result in savings. Defendant claims that, in fact, for the first nine months or so after the fixed-rate period, Plaintiff's rates were lower than those charged by PSE&G. Similarly, the Complaint omits that the Agreement expressly states that Defendant's rates could be higher or lower than those of PSE&G. *See* Agreement at § 4.

### a. The New Jersey Consumer Fraud Act

Defendant argues that the CFA claim must be dismissed because Plaintiff has failed to sufficiently allege any substantial aggravating factors, and that Defendant only did what it was permitted to do under the Agreement. Def. Br. at 11-12, 14-15. As to Plaintiff's allegation that Defendant made a material misrepresentation, Defendant argues that Plaintiff must show that any such statement was false when it was made, *i.e.* in September 2011. Def. Br. at 14, Reply at 1.[5] Defendant further argues that Plaintiff has not plausibly pled that any statement was false when it was made because Plaintiff was not charged higher rates until August 2013. *Id.*, Reply at 2-3.

---

[5] Defendant appears to concede that Plaintiff need not plead that the statement was made with scienter, *i.e.*, knowledge that it was false. Reply at 2.

5

Plaintiff argues in his Opposition that a reasonable consumer would assume that the Variable-Rate Factors reflected only wholesale electricity costs and competing rates, and that Defendant's variable rate prices did. Opp. at 10-11. He further argues that Defendant excessive rate is an aggravating circumstance akin to price gouging. *Id.* at 14-15. As for the affirmative misrepresentation, Plaintiff argues that they need not plead or show scienter, meaning an intent to deceive or knowledge of the statement's falsity.[6] *Id.* at 18 & n.11.

The New Jersey Consumer Fraud Act provides that the

> act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A. § 56:8-2. A CFA claim is comprised of "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *International*

---

[6] The Complaint asserts that Defendant made actionable omissions. Compl. at ¶ 37. Nevertheless, in his briefing, Plaintiff asserts that he is not alleging a theory of omission. Opp. at 19 & n.12. Given Plaintiff's representation in his Opposition, the Court will address not any alleged omission.

In addition, the Complaint alleges that the Agreement is just that, an agreement. In his opposition, Plaintiff argues that the Agreement is both a solicitation and a contract. *See* Opp at 9-10. Plaintiff cannot revise the Complaint by making new allegations in his brief. *Pennsylvania ex rel. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff's opposition also refers to a conversation that Plaintiff had with Constellation's predecessor before receiving the Agreement, Opp. at 9, but the conversation is likewise not mentioned in the Complaint. As a result, the Court does not consider such allegations in deciding the motion.

*Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007).

In addition, "[c]laims under the CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)," which requires more than the *Twombly-Iqbal* standard, including "notice of the precise misconduct with which [defendant is] charged." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F.Supp.2d 707, 709 (D.N.J. 2010) (internal citations omitted). A plaintiff must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *See Urbino v. Ambit Energy Holdings, LLC*, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015) (internal citations omitted).

When a CFA claim is based on a valid contract, "a court will dismiss [the] claim" if the conduct alleged is "expressly authorized" by the terms of that contract. *Id.* What's more, when a CFA claim is based on a breach of contract, Plaintiff must allege a "substantial aggravating circumstance," demonstrating that defendant's behavior "stands outside the norm of reasonable business practice in that it will victimize the average consumer." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). "Whether a business practice is unfair is a question for the jury, but if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings." *Urbino*, 2015 WL 4510201, at *3 (citing *Hassler v. Sovereign Bank*, 374 Fed. App'x. 341, 344 (3d Cir. 2010)).

Numerous cases have addressed motions to dismiss similar to the one at bar. In *Urbino*, the defendant indicated on its website and in its marketing materials that switching electric companies would result in "great" or "substantial" savings. *Urbino*, 2015 WL 4510201, at *1. The materials also promised "low, competitive rates." *Id.* The plaintiff indicated that based on these representations, he switched from Public Service Enterprise Group ("PSE&G") to the

7

defendant's service. *Id.* Plaintiff entered into a variable-rate contract with the defendant, which indicated that rates were subject to change at the discretion of the defendant and which did not reference savings or make any guarantees. *Id.* at *4. The contract also had an integration clause, which indicated that the contract set forth the entire agreement of the parties. *Id.* Over a year later, the plaintiff determined that defendant's electric rates for two recent months were sixty percent higher than those of PSE&G. *Id.* at *1. As a result, the plaintiff sued the defendant for a violation of the CFA, among other things. *Id.* at *3.

The *Urbino* court granted the defendant's motion to dismiss finding that the CFA claim was not adequately pled. *Id.* at *5. Judge Shipp reasoned that the defendant had not made any material misrepresentations because the written agreement expressly permitted the defendant the discretion to change its rates. *Id.* at *4-5. The court in *Urbino* also found the promises of savings and competitive rates were not actionable because they were superseded by the actual agreement, which contained the integration clause. *Id.*

*Urbino* also cited approvingly to *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815 (D.N.J. Sept. 4, 2012). In *Faistl*, the defendant's marketing materials stated that customers would save money "without risk" and receive competitive rates "up to 10% below [the] local utility company." *Id.* at *1. The plaintiff alleged that based on the representations, he switched utility services. The plaintiff and the defendant entered into a written agreement, which provided in part

> For Electricity—The initial rate that applies to your first month of service is listed below based on your account type and utility. . . . Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expenses and margins. The price may be lower or higher than your [local distribution utility]'s price.

8

*Id.* at *2 (omission in original). The plaintiff in *Faistl* brought a CFA claim based on the alleged misrepresentations and omissions regarding the alleged savings, but Judge Linares dismissed the claim because the agreement itself contained no guarantee of monthly savings. *Id.* at *6. Additionally, the *Faistl* court observed the explicit language of the contract trumped any promises made in the marketing materials so that none of plaintiff's allegations were "aggravating circumstances" under the CFA. *Id.* at *5-6.

In *Hamlen v. Gateway Energy Services Corporation*, 2017 WL 892399, at *1 (S.D.N.Y. Mar. 6, 2017), the plaintiff switched gas service to the defendant's service. The parties' contract stated that the variable rate would be "based on our evaluation of a number of factors that affect the total price of electricity," and specifically disclaimed "any warranty or guaranty that the price charged by us . . . will be lower than the price that you would have been charged by the utility or another third-party supplier." *Id.* at *1-2. After he switched companies, the plaintiff alleged that the defendant's "rates were higher than [New Jersey Natural Gas' (NJNG)] rates every month for a four-and-a-half your period" and that in some months the defendant's rates were more than double those of NJNG. *Id.* at *2. Nevertheless, the *Hamlen* court dismissed the CFA claim because the plaintiff had failed to allege substantially aggravating circumstances; to the contrary, the court observed, the contract expressly provided that the rate might not be lower than those of other providers. *Id.* at *3. The court in *Hamlen* added that the "defendant exercised its discretion to set rates higher – even substantially higher – than the wholesale market or other retail provides is not a sufficiently 'substantial aggravating' circumstance to state a valid NJCFA claim.'" *Id.* (citations omitted).

Similarly, in *Windley v. Starion Energy, Inc.*, 2016 WL 197503, at *2 (S.D.N.Y. Jan. 8, 2016), the court dismissed a CFA claim because the plaintiff failed to plausibly allege substantial

9

aggravating circumstances. The plaintiff alleged that the defendant made material misrepresentations ensuring financial savings, but that instead the defendant's prices "far exceeded market rates[.]" *Id.* at *1. The parties' contract stated:

> The Variable rate will be calculated monthly based on the [defendant] variable price methodology. The Variable Rate may change in response to market conditions, including such factors as electricity market pricing, applicable taxes, transmission costs, utility charges and other market price related costs, at [defendant's] discretion. . . . The price of your [Local Distribution Company]'s standard offer service electricity rate will also likely change from time to time and, therefore, [defendant] cannot guarantee savings over the LDC's rates under this Agreement. New customers may receive a one time introductory rate. For all subsequent time periods the price will be either [defendant] Smart or [defendant] Simple, as stated at sign-up.

*Id.* (omission in original). The *Windley* court reasoned that "[s]ince [the defendant] was permitted by contract to change its rates," and the contract had an integration clause that superseded any marketing pitches, "[the defendant's] alleged misrepresentations cannot constitute 'substantial aggravating circumstances.'" *Id.*

By comparison, in *Melville v. Spark Energy*, the court did not dismiss the CFA claim. 2016 WL 6775635 (D.N.J. Nov. 15, 2016). There, the plaintiff was allegedly charged rates four times more than those charged by PSE&G. The court in *Melville* described the rates as "untethered to those of the market at large," despite the fact that the defendant's contract stated that the variable rate would change monthly "according to market conditions." *Id.* at *1-4. Yet, the court also indicated that the Complaint needed to allege additional sufficiently aggravating circumstances to plausibly state a CFA claim. *Id.* at *3. To this end, Judge Kugler found that puffery was not actionable, observing that puffery was comprised of "vague, highly subjective claims" rather than "specific, detailed factual assertions." *Id.* at *3 (internal quotations and citation omitted). The court in *Melville* noted that claims of "low, competitive rates," "substantial" or "great savings,"

10

and "exceptional value," were "too vague to constitute a violation of the NJCFA." *Id.* (citing *Urbino*, 2015 WL 4510201, at *5). However, the *Melville* court continued, the following statements of the defendant were sufficiently specific to adequately allege a sufficiently aggravating factor: "representations that customers will pay less in comparison to their local energy supplier and average out over time[.]" *Id.* at *4.

Similarly, in *Vitale v. U.S. Gas & Electric, Inc.*, 2016 WL 1060807, at *1, 3 (D.N.J. Mar, 16, 2016), Judge McNulty also refused to dismiss a CFA claim because the plaintiffs plausibly plead that defendants knew they would have to raise rates in the winter months but did not disclose this information; instead they told plaintiffs they would save money and that their prices were competitive. Despite the claim of savings competitive rates, the defendants charged "double or triple" the rates of other utilities, according to the plaintiff. *Id.* at *1.

At the outset,[7] the Court does not agree with Plaintiff that the "market conditions" referred to in the Variable-Rate Factors mean only "wholesale costs" and "competing rates." Plaintiff provides no legal or factual support for this argument. To the contrary, the Agreement does not promise savings or competitive pricing. In fact, the Agreement indicates that rates could be higher or lower than those charged by PSE&G.

Similarly, the Court does not agree with Plaintiff's argument that wholesale market rates are the only cost that Defendant could use to set its variable rate. The Variable-Rate Factors do no so limit Defendant. Plaintiff's argument fails to account for other sources of supply – such a

---

[7] The Court also has concerns over the time-frame alleged in the Complaint. While the Court agrees that Plaintiff does not have to allege knowledge or intent, he does need to plausibly plead that Defendant's statement was false when it was made. Here, the higher rates that Plaintiff was charged did not take effect until approximately nine months after initial fixed-rate period of one year. In the meantime, Plaintiff could have opted for another fixed-rate plan or opted out of any service with the defendant.

11

bilateral contracts or self-supply. Def. Br. at 24. Moreover, as to Plaintiff's sole factor, the "weighted" LMP, there are two types of wholesale market rates, and Plaintiff does not indicate which he relies on. Plaintiff also now argues the "weighted" LMP means the monthly average, although this is not clear from the Complaint.

The Complaint is also contradictory. The Complaint alleges that in light of the declining wholesale market rates, Defendant's prices should have similarly decreased. At the same time, Plaintiff states that PSE&G is the appropriate barometer and that PSE&G's rates *went up* during the same period (albeit at a rate less than Defendant's). If Plaintiff's allegation is accurate, then PSE&G's rates should have dropped. Moreover, as to the PSE&G rates, the Complaint makes a general comparison over a limited period, July through November 2013, without further explanation.

In sum, the Complaint does not plausibly plead that Defendant breached the Agreement, much less sufficiently assert substantial aggravating circumstances, which is necessary to proceed on a claim under the CFA. This case is akin to *Urbino*, *Faistl*, and *Windley* – where the express language of contract permitted consideration of non-exhaustive factors. Unlike *Melville*, there was no representation that Plaintiff would pay less in comparison to their local energy suppliers. Moreover, unlike *Vitale*, there is no allegation here that Defendant knew it would have to charge much higher prices during certain times of year.

For the foregoing reasons, Count I is dismissed because it is not plausibly pled.

### b. Breach of Contract

The Complaint states that Defendant breached the Constellation Agreement "by charging variable rates not based on electricity market pricing and other market related factors." Compl at ¶ 32(b)(ii). Defendant argues that Plaintiff has wrongly focused on the wholesale electricity

market to allege that Defendant breached the Agreement. Def. Br. at 18-19. Defendant points to other factors its variable rate took into account, *e.g.*, customers switching providers as the result of Defendant's rates. *Id.* at 19. Defendant also argues that PSE&G is not an appropriate proxy because it is a different type of entity in that it does not retain its profits, and that the LMP is only one reflection of market conditions.[8] *Id.* at 19-20.

Plaintiff responds that market pricing is based on two components: wholesale costs and competitor pricing, Opp. at 26, and that by failing to base its rates those two criteria, Defendant breached the Agreement. *Id.* at 27. Plaintiff similarly argues that PSE&G's rates accurately reflect the appropriate market factors, and that "over the long term, Constellation's performance compared to PSE&G's was abysmal." *Id.* at 26.

To state a claim for breach of contract, plaintiff must allege the following: (1) the existence of the contract; (2) breach of the contract (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *Faistl*, 2012 WL 3835815 at *7. "The plaintiff must also specifically identify portions of the contract that were allegedly breached." *Id.*

*Windley* and *Hamlen* are instructive. In *Windley*, the court granted the motion to dismiss as to the contract claim because the contract at issue stated that the defendant did not guarantee savings, despite the fact that during a marketing call, a representative stated that the defendant's services would result in savings. *Windley*, 2016 WL 197503, at *3. Similarly, in *Hamlen*, the motion to dismiss the contract claim was granted even though plaintiff argued that defendant

---

[8] Defendant explains that New Jersey is part of a regional wholesale market that is operated by PJM Interconnection, L.L.C. Def. Br. at 5. PJM is referenced in the Complaint and in Plaintiff's Opposition but is not defined. *See, e.g.*, Compl. at ¶ 24; Opp. at 3 & n.2. The tariff that governs wholesale energy allows "two daily auction markets for energy," but market participants can also "acquire energy outside" both these markets, "either through bilateral contracts with other market participants or through 'self supply' from a participant's own generation resources." *Id.* at 5-6. Plaintiff does not contest that this is an accurate description of the electricity market in New Jersey.

charged more than its competitors and the relevant wholesale rate. *Hamlen*, 2017 WL 892399, at *4. There, the court found that the plaintiff conflated the wholesale rate with the defendant's natural gas costs (including futures contracts to offset future market volatility), and that defendant considered a non-exhaustive list of facts to determine the variable rate. *Id.* The court held that merely arguing that a defendant's rates did not track wholesale or competitive rates is insufficient to state a claim for breach of contract. *Id.*

The Court does not find Plaintiff's authority to be persuasive. In *Claridge v. North American Power & Gas, LLC*, 2015 WL 5155934, *6 (S.D.N.Y. Sep. 2, 2015), the court concluded that the question of whether the defendant had breached the contract could not be resolved at the pleading stage because the wording of the agreement was "confusing and ambiguous" as to its rate calculation method. *Id.* at *6. The language here is not comparable, and instead lays out a non-exhaustive list of factors Defendant would take into account when calculating the variable rate. In *Mirkin v. Viridian Energy, Inc.*, 2016 WL 3661106 (D. Conn. July 5, 2016), the agreement stated that the variable rate would "fluctuate from month-to-month based on wholesale market conditions." *Id.* at *3. The court found that the variable rates, however, did not vary based on the wholesale market. *Id.* at *8. Here, the Variable-Rate Factors are not limited to wholesale market conditions.

Plaintiff has not plausibly plead a breach of the Agreement. As with the CFA claim, the Court does not agree that "market conditions" means wholesale costs and competing rates. As in *Hamlen*, Plaintiff's attempt to use wholesale prices as the overriding factor to support its breach of contract claim is not viable because the Variable-Rate Factors are not so limited. Additionally, the Agreement does not guarantee savings or competitive pricing, although Plaintiff now attempts to read competitive pricing into the contract.

For the foregoing reasons, Count II is dismissed.

### c. The Implied Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff has failed to plausibly plead a breach of the duty of good faith and fair dealing, noting that the allegations in the Complaint are conclusory. Def. Br. at 22. Defendant adds that the LMP comparison laid out in the Complaint is flawed, not only because it is not clear whether the LMP reflect real-time or day-ahead markets, but also because it ignores the other means by which Defendant gets energy. *Id.* at 23-24. In response, Plaintiff argues that Defendant exercised their discretion in bad faith, and that his use of the "weighted" LMP was in fact an accurate monthly snapshot of local energy rates. Opp. at 32-36.

The implied covenant of good faith and fair dealing is a "component of every contract that requires both parties to a contract act in 'good faith[,]'" that is, they must "adher[e] to 'community standards of decency, fairness, or reasonableness.'" *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109 (2007) (internal citations omitted). Good faith "requires a party to refrain from 'destroying or injuring the right of the other party to receive its contractual benefits.'" *Id.* at 110 (citation omitted).

When a party has the right to exercise discretion under a contract, the discretion must not be used "arbitrarily, unreasonably, or capriciously." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage . . . are of no legal significance."). However, "a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." *Urbino*, 2015 WL 4510201, at *6 (internal citations omitted).

Here, Plaintiff has failed to plausibly allege bad faith, instead relying on vague and conclusory allegations. *See, e.g.*, Compl. at ¶¶ 32(b)(iii), 56. *See Urbino*, 2015 WL 4510201, at *6 (dismissing the good faith and fair dealing claim because plaintiff failed to allege facts to support an inference of bad faith). However, this claim is closer than Count One and Two because the Complaint does allege that Defendant's rates were higher than PSE&G's for over two years (assuming that PSE&G is an appropriate comparison, which Defendant contests). *Cf. Hamlen*, 2017 WL 892399, at *5. However, unlike *Hamlen*, Plaintiff does not allege that Defendant charged a higher rate than PSE&G every month or that Defendant's rates were sometimes double[9] those of PSE&G. Thus, Count Three is also dismissed.

## IV. Conclusion

For the reasons stated above, Defendant's motion is granted, and the Complaint is dismissed. The dismissal is without prejudice and Plaintiff is granted leave to file an Amended Complaint. Plaintiff has thirty (30) days to file an Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: June 29, 2018

John Michael Vazquez, U.S.D.J.

---

[9] The Court is not finding that a rate of double or higher is necessary to support a claim for breach of the covenant of good faith and fair dealing. Instead, the Court is noting the specific factual differences with *Hamlen*. More importantly, during the period that Defendant's rates were allegedly higher than those of PSE&G, the Complaint fails to provide an adequate comparison. *See* Compl. at ¶¶ 20-21.