# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL CODA, individually and on behalf all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CONSTELLATION ENERGY POWER CHOICE, LLC.,<br><br>　　　　　　Defendant. | Civil Action No.  2:17-cv-03437-JMV-MF |

_____

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY

_____

Matthew R. Mendelsohn
**MAZIE SLATER KATZ &**
**FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

D. Greg Blankinship
Todd S. Garber
Chantal Khalil
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601

*Attorneys for Plaintiff and the Putative Class*

Plaintiff Michael Coda ("Plaintiff" or "Mr. Coda") respectfully requests leave to submit this response to Defendant Constellation Energy Power Choice, LLC's ("Defendant" or "Constellation") Notice of Supplemental Authority, ECF No. 47, filed in connection with Constellation's pending Motion to Dismiss the Amended Class Action Complaint, ECF No. 35.  *Sevugan v. Direct Energy Servs., LLC*, No. 18-3082, 2019 WL 3367674 (7th Cir. July 26, 2019), which is an out-of-Circuit decision, is inapt for a variety of reasons and ultimately militates in favor of denying Defendant's Motion to Dismiss.

First, the variable rate methodology at issue in *Sevugan* differs dramatically from Constellation's variable rate methodology, most notably with respect to discretion.  In *Seguvan*, the contract provided that, "Direct Energy will charge you at a variable price per kWh based upon generally prevailing market prices for electricity in the PJM market at the Electric Utility load zone for the applicable period, plus an adder, determined solely by Direct Energy in its discretion." *Sevugan*, 2019 WL 3367674, at *2.  In its analysis, the Seventh Circuit emphasized that the pricing provision granted Direct Energy the sole discretion to set its rates, including its adder.  *Id.* at *6.  In fact, the Seventh Circuit distinguished *Sevugan* from *Mercado v. Verde Energy* on the basis that "the contract language in that case [*Mercado*] did not give the supplier discretion in setting rates . . . as Direct Energy

1

has here." *Sevugan*, 2019 WL 3367674, at *7 n.6 (citing *Mercado v. Verde Energy USA, Inc.*, No. 18-2068, 2019 WL 978531 (N.D. Ill. Feb. 28, 2019)).

Conversely, Constellation's contract states that it will set the variable rate each month "based upon factors as electricity market pricing, transmission costs, utility charges and other market related factors." Amended Class Action Complaint, ECF No. 32, ("Am. Compl.") ¶ 24. Unlike the *Sevugan* contract, and akin to the *Mercado* contract, Constellation's contract does not permit Constellation to include an adder, nor does it provide Defendant with discretion. Instead, per the terms of its own contract, Constellation must set its variable rate based on electricity market pricing. Constellation's pricing provision therefore limits variability to the only two electricity markets: supply side, as reflected in wholesale market pricing (*i.e.*, PJM's prices), and demand side, as reflected in Constellation's competitors' (*i.e.*, the local utility and other independent energy suppliers) retail rates, all of which Plaintiff addresses in his complaint. *See* Am. Compl. ¶¶ 38-40 (comparing Constellation's rates to wholesale market pricing), Am. Compl. ¶¶ 29-34 (comparing Constellation's rates to the local utility's rates), Am. Compl. ¶ 35 (comparing Constellation's rates to other independent energy suppliers' rates).[1]

---

[1] The local utility's rates and other independent energy suppliers' rates include the other electricity market cost components, *i.e.*, transmission, ancillaries, capacity, and utility charges. Am. Compl. ¶ 44.

2

Second, the relevant utilities in *Sevugan* and here set their rates in different manners, such that the Seventh Circuit's assessments regarding ComEd's (*i.e.*, the *Sevugan* plaintiff's local utility) rates are not applicable to the instant action. The *Sevugan* court found that the plaintiff did not plausibly allege that ComEd's rates reflect market forces, particularly because Illinois utility rates are regulated and set by the Illinois Commerce Commission, and the court consequently held that ComEd's rates could not serve as comparators. In New Jersey, on the other hand, "[p]ursuant to the Electric Discount and Energy Competition Act of 1999, the power procured by utilities must be purchased at prices consistent with market conditions. . . As a result, these auctions reflect market-determined prices. The utilities then charge their customers a rate consistent with market conditions in the competitive wholesale marketplace, related transmission, capacity, ancillary, and administrative costs as determined by the [New Jersey Board of Public Utilities] -- without any markup or profit. Because New Jersey utility rates do not include any profits, they serve as pure reflections of average market costs of wholesale electricity, associated costs, and distribution over time." Am. Compl. ¶ 17. Thus, as opposed to utility rates in Illinois, Mr. Coda's utility's rates are ideal comparators because, by law, they must reflect market pricing. Moreover, in New Jersey, the local utility is always the primary competitor; accordingly, its rates inherently represent market prices. *See id.* ¶31.

3

Third, the *Sevugan* court held that the plaintiff's failure to offer any information about other independent energy companies' rates rendered his claim too speculative. *Sevugan*, 2019 WL 3367674, at *3-*5 ("The complaint was silent on rates charged by other Illinois alternative retail energy suppliers, which the district court considered Direct Energy's competition."). In contrast, Mr. Coda's pleadings provide data from the U.S. Energy Information Administration ("EIA") regarding independent energy suppliers' rates, which demonstrates that Constellation's electricity rates were higher than the vast majority of other independent energy suppliers' rates in New Jersey. Am. Compl. ¶ 35 (citing *2016 Retail Power Marketers Sales -- Residential*, U.S. ENERGY INFORMATION ADMINISTRATION, http://bit.ly/2pgWXpO (last visited Aug. 20, 2018)). Thus, according to the Seventh Circuit's reasoning, Mr. Coda provides sufficient information to plausibly allege his claims.[2]

Fourth, Defendant contends that PJM's wholesale prices are not a proper comparator because they "exceed[ed] PSEG's rates and Constellation's rates in some months." ECF No. 47 at 1-2. Defendant is incorrect. Constellation's variable rates were invariably significantly higher than PSE&G's rates *every single*

---

[2] Defendant's Notice of Supplemental Authority notes, once again, that Plaintiff's EIA data concerns Constellation's and its competitors' rates in 2016. ECF No. 47 at 2. Plaintiff addressed the relevance of the EIA data in his Opposition to Motion to Dismiss. *See* ECF No. 41, at 1-2.

*month*.  Am. Comp. ¶¶ 29-30.  Likewise, Constellation's variable rates were exponentially higher than wholesale prices in *all but one* billing period -- January to February 2014 -- which coincided with the Polar Vortex (during which electricity demand unexpectedly spiked, triggering a sudden increase in electricity prices).  The one-month aberration therefore undercuts Defendant's own argument and instead reinforces the well-established notion that PJM wholesale prices represent market forces.

Fifth, unlike in *Sevugan*, Plaintiff provides the Court with New Jersey statutory authority which mandates that independent energy suppliers inform customers of their applicable pricing methodology.  Pursuant to New Jersey law, "[a] TPS [third-party energy suppler] contract shall *clearly and conspicuously* . . . include *explicit* terms and conditions, which shall include, at a minimum . . . a *clear and unambiguous* statement of the *precise* mechanism or formula by which the price will be determined[.]"  N.J. Admin. Code § 14:4-7.6(b) (emphasis added).  *See* Opposition to Motion to Dismiss, ECF No. 41, at 10, 16-18, 35.  Therefore, interpreting Constellation's pricing methodology as providing Defendant with unfettered discretion would not only render the contract's own terms meaningless, but it would also undermine New Jersey's energy industry-specific consumer protection laws which are intended to protect consumers from precisely the type of predatory behavior Constellation seeks to justify.

Finally, *Sevugan* solely addressed a breach of contract claim, whereas Mr. Coda pleads violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq*. ("NJCFA"), breach of the implied covenant of good faith and fair dealing, and breach of contract.  *See* Am. Compl. ¶¶ 60-85.

For the foregoing reasons, and the reasons stated in Plaintiff's Opposition to the Motion to Dismiss, Plaintiff plausibly alleges his claims and the Motion to Dismiss should be denied.

                                           Respectfully submitted,

Dated: August 9, 2019            *s/ Matthew R. Mendelsohn*
                                         Matthew R. Mendelsohn
                                         MAZIE SLATER KATZ & FREEMAN LLC
                                         103 Eisenhower Parkway
                                         Roseland, NJ 07068

                                         D. Greg Blankinship
                                         Todd S. Garber
                                         Chantal Khalil
                                         FINKELSTEIN, BLANKENSHIP,
                                         FREI-PEARSON & GARBER, LLP
                                         445 Hamilton Avenue, Suite 605
                                         White Plains, New York 10601

                                         *Counsel for Plaintiff and Putative Class*