Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL CODA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>CONSTELLATION ENERGY POWER CHOICE, LLC,<br><br>*Defendant.* | Civil Action No. 17-3437 (JMV) (MF)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiff alleges that Defendant overcharged him for electricity. Currently pending before the Court is a motion to dismiss the First Amended Class Action Complaint (the "FAC") filed by Defendant Constellation Energy Power Choice, LLC ("Constellation" or "Defendant"). D.E. 35. Plaintiff filed a brief in opposition to Defendant's motion (D.E. 41), to which Defendant replied (D.E. 42). After briefing on the motion was complete, both parties filed notices of supplemental authority and responses. D.E. 45-50. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

---

[1] The following briefs were submitted in connection with this motion: Brief in Support of Defendant's Motion to Dismiss (D.E. 35-3), hereinafter "Def. Br."; Plaintiff's Brief in Opposition (D.E. 41), hereinafter "Plf. Opp."; and Defendant's Reply Brief (D.E. 42), hereinafter "Def. Reply."

## I. Factual Background[2] & Procedural History

Defendant Constellation is an energy service company ("ESCO") that supplies power to residents in New Jersey. FAC ¶ 8, D.E. 32. Defendant[3] offered Plaintiff a 12-month fixed rate for electricity, at a rate of $0.0999 per kilowatt hour (kWh), which he accepted in 2011 (the "Agreement"). *Id.* ¶ 23, 28. Plaintiff alleges that after the initial 12-month period, Defendant automatically converted Plaintiff to a "Variable Rate," which Defendant "established monthly, based upon such factors as electricity market pricing, transmission costs, utility charges and other market related factors." *Id.* ¶¶ 23, 27; *see also* Agreement § 4. The Agreement provided that at least thirty days before the Agreement expired, Defendant may offer to renew the Agreement or offer different conditions. But if Plaintiff did not accept a new contract in writing, "[Plaintiff's] existing contract [would] continue on a month-to-month basis with a Variable Monthly Rate." Agreement § 3. The Agreement also stated that Defendant "offers several different rate plans for buying electricity which may be higher or lower than PSE[&]G's posted rate." *Id.* § 4. Finally, once Plaintiff began paying the Variable Monthly Rate, Plaintiff could have requested that

---

[2] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff attached the contract at issue (the "Agreement") as an exhibit to the FAC. Moreover, the Agreement is referenced in the FAC. Accordingly, the Court will consider the Agreement, as well as the factual allegations in the FAC in deciding this motion to dismiss.

In its prior Opinion granting Defendant's motion to dismiss the initial Complaint, the Court reviewed Plaintiff's relevant allegations concerning New Jersey's deregulation of the energy industry. D.E. 28. This information has not changed in the FAC, so the Court does not repeat it here.

[3] The offer was made by Defendant's predecessor, MXenergy. FAC ¶ 20. For simplicity, the Court merely refers to Defendant in the Opinion.

Defendant switch his pricing to a fixed rate (*id.*) or could canceled "at any time for any reason." (*id.* § 9).

Plaintiff was a Constellation customer from late-2011 to January 14, 2016. FAC ¶ 28. After the initial year of service, Plaintiff was switched to the Variable Monthly Rate, and alleges that the variable rate "was consistently higher than his initial rate and often substantially higher than PSE&G's and competing ESCOs' rates." *Id.* ¶ 27. Plaintiff adds that "[a] reasonable consumer . . . would understand based on [Defendant's] representations that the variable rate would reflect wholesale electricity prices and local competitors' rates." *Id.* ¶ 25. Plaintiff further contends that Defendant's variable rate did not reflect wholesale electricity costs nor was it competitive. *Id.* ¶ 26. Rather, Plaintiff alleges that Defendant "gouges its customers by charging outrageously high rates" and makes materially misleading statements because the rates customers are charged are not based upon the factors listed in the Agreement. *Id.* ¶¶ 41, 45. Plaintiff continues that Defendant engaged in a "bait-and-switch scheme designed to deceive reasonable consumers." *Id.* ¶ 2. As such, Plaintiff contends that Defendant knew that it would charge Plaintiff a high variable rate after his low "teaser rate" expired and Plaintiff was automatically switched to the variable rate. *Id.* ¶ 2. Plaintiff contends that Defendant's rates were "higher than approximately 75% of the ESCOs providing residential electricity services in New Jersey." *Id.* ¶ 35. Plaintiff also produces a chart comparing Defendant's monthly rate with that of the weighted locational marginal price of the relevant territory, asserting that the differential is further evidence of Defendant's improper pricing. *Id.* ¶¶ 38-40.

Thus, Plaintiff's allegations and the Agreement demonstrate the following. In 2011, Plaintiff agreed to a one-year, fixed-rate contract with Defendant. The fixed rate was $0.0999 per kWh. Plaintiff does not make any allegations of impropriety as to the amount of the initial fixed

3

rate, other than to label it a "teaser rate." At the end of the one-year period, Plaintiff and Defendant could have entered into another fixed-term contract at a variable or fixed rate. This did not happen. As a result, and pursuant to the Agreement, Plaintiff's relationship with Defendant continued on a month-to-month basis with a variable rate. Plaintiff also had the right to cancel the month-to-month relationship "at any time for any reason." Moreover, Plaintiff's monthly invoices reflected Defendant's rate along with PSE&G's rate; Plaintiff could compare the two prices based on the invoice. *Id.* ¶ 29. PSE&G's rate did not reflect any markup for profit. *Id.* ¶ 29. Even though PSE&G's rate does not include a profit amount, Plaintiff contends that the rate "serves as the ideal comparator" for Defendant's rate. *Id.* ¶ 31.

Plaintiff filed his initial Complaint on May 17, 2017. D.E. 1. The putative class in the Complaint is defined as "all Constellation customers who paid Constellation's variable rate for electricity at any time between May 15, 2011 and the present." *Id.* ¶ 30. The Complaint asserted the following three counts: (1) violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"); (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 34-57. On July 14, 2017, Defendant filed a motion to dismiss the Complaint, which Plaintiff opposed. This Court granted Defendant's motion to dismiss on June 29, 2018. The Court dismissed the Compliant in its entirety for failure to state a claim but granted Plaintiff leave to file an amended complaint. D.E. 28, 29.

Plaintiff subsequently filed the FAC, which asserts the same causes of action against Defendant on behalf of the same putative class. D.E. 32. Defendant filed the instant motion to dismiss on September 18, 2018. D.E. 35. Defendant argues that the FAC still fails to state any plausible claims and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

4

## II. Standard of Review

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III. Analysis

At the outset, like the initial Complaint, each count of the FAC relies on language in the Agreement setting forth the factors that would be considered in determining the variable rate: "such factors as electricity market pricing, transmission costs, utility charges and other market related factors" (the "Variable-Rate Factors"). Agreement § 4. As explained in this Court's prior opinion dismissing the Complaint, this language does not indicate that the pricing would be competitive or

5

that it would result in savings to Plaintiff. Opinion at 5, D.E. 28. In fact, the FAC still omits the critical fact that the Agreement expressly states that Defendant's rates could be higher or lower than those of PSE&G. *See* Agreement § 4. Further, this Court still finds that the reference to "market conditions" in the Agreement is not limited to "wholesale costs" and "competing rates." *See* Opinion at 11.

### a. The New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act provides that the

> act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A. 56:8-2. A CFA claim is comprised of "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007).

In addition, "[c]laims under the CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)," which requires more than the *Twombly-Iqbal* standard; including "notice of the precise misconduct with which [defendant is] charged." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F.Supp.2d 707, 709 (D.N.J. 2010) (internal citations omitted). A plaintiff must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *See Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015) (internal citations omitted).

When a CFA claim is based on a valid contract, "a court will dismiss [the] claim" if the conduct alleged is "expressly authorized" by the terms of that contract. *Id.* What's more, when a CFA claim is based on a breach of contract, Plaintiff must allege a "substantial aggravating circumstance," demonstrating that the defendant's behavior "stands outside the norm of reasonable business practice in that it will victimize the average consumer." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). "Whether a business practice is unfair is a question for the jury, but if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings." *Urbino*, 2015 WL 4510201, at *3 (citing *Hassler v. Sovereign Bank*, 374 F. App'x. 341, 344 (3d Cir. 2010)).

In dismissing the CFA claim in the initial Complaint, the Court determined that Plaintiff failed to assert substantial aggravating circumstances, which is necessary to proceed on a contract-based claim under the CFA. Specifically, this Court determined that the express language of the Agreement permitted Defendant to consider a list of non-exhaustive factors in setting the variable rate that were not necessarily tied to wholesale market rates. In addition, there was no representation in the Agreement that Plaintiff would pay less in comparison to other local energy suppliers. Opinion at 11-12. The FAC fails to remedy these deficiencies, largely because Plaintiff cannot change the terms of the Agreement. Thus, Plaintiff's new allegations in the FAC comparing Constellation's rates to competitors (FAC ¶ 35) and explaining that a reasonable consumer would expect Defendant's rates would be competitive (*id.* ¶ 30) are not enough to state a claim in light of the Agreement. Accordingly, Plaintiff fails to establish that there were any substantial aggravating circumstances.[4]

---

[4] Plaintiff also argues that there were substantial aggravating circumstances because Defendant failed to adhere to N.J.A.C. 14:4-7.6(b). N.J.A.C. 14:4-7.6(b)(2) provides that a contract from a

7

Plaintiff also makes slight changes in the FAC to focus on an alleged "bait-and-switch scheme." First, Plaintiff contends that he does not need to establish substantial aggravating circumstances because the Agreement was originally a solicitation. *See* FAC ¶ 22. Plaintiff continues that when Defendant made the solicitation, it made a misrepresentation as to how it would set the monthly variable rate. Plaintiff alleges that Defendant made this affirmative statement to induce Plaintiff to enter into the contract, automatically switch customers like Plaintiff to the variable rate, and then charge a variable rate that was untethered from market pricing and other market related factors. FAC ¶ 70. Second, Plaintiff argues that Defendant's "bait-and-switch marketing scheme" constitutes a deceptive and unconscionable business practice. Plf. Br. at 33-34. The Court disagrees.

The FAC omits the critical fact that Plaintiff could have (after the initial one-year period expired) terminated his relationship with Defendant "at any time for any reason" or asked to be switched back to a fixed rate. Agreement §§ 4, 9. Thus, Plaintiff was not forced into paying rates he did not like. In fact, as noted, Plaintiff's energy bills included a price comparison between the rates he was being charged by Defendant and PSE&G's rates. FAC ¶ 29 nn.1-2. Accordingly, Plaintiff was well aware of how his monthly rate compared to rates he would have been paying with PSE&G and he could have canceled his contract with Constellation at any time.[5] Moreover,

---

third-party energy supplier, like Constellation, must include "a clear and unambiguous statement of the precise mechanism or formula by which the price will be determined." N.J.A.C. 14:4-7.6(b)(2). At a glance, this argument may have merit. But the fact that Constellation may have been required to follow N.J.A.C. 14:4-7.6 is not plead in the FAC. Plaintiff cannot amend the FAC through a brief. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)).

[5] Although Plaintiff cites to factually similar cases that survived a motion to dismiss, it does not appear that the plaintiffs in any of these other cases similarly alleged that their monthly bills

the plain terms of the Agreement demonstrate that the switch from a fixed-rate to a variable rate was automatic *if* the parties failed to enter into an additional contract. Agreement § 4.[6] As a result, Plaintiff fails to establish that Defendant made a material misrepresentation or engaged in a deceptive or unconscionable business practice, even assuming that the Court accepts Plaintiff's allegation that the Agreement was initially a solicitation.

For the foregoing reasons, Count I is dismissed.

### b. Breach of Contract

To state a claim for breach of contract, plaintiff must allege the following: (1) the existence of the contract; (2) breach of the contract (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (quoting *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002)). "The plaintiff must also specifically identify portions of the contract that were allegedly breached." *Id.*

The breach of contract claim was dismissed from Plaintiff's initial Complaint because, like the CFA claim, the Court did not agree that "market conditions" necessarily meant wholesale costs

---

included a rate comparison like Plaintiff does here. While Plaintiff contends that Defendant lured him with a "teaser rate," this is not a situation in which the parties entered into a fixed-term contract in which only the initial period was subject to a teaser rate followed by increasing prices which Plaintiff was contractually obligated to accept. Instead, the crux of Plaintiff's claim concerns Defendant's rates (1) during the period (month-to-month) in which Plaintiff could have cancelled at any time and for any reason, and (2) during the period in which PSE&G's rates were provided to Plaintiff next to Defendant's rates on the monthly invoice. Plaintiff does not argue that a reasonable consumer did not understand the invoices or that a reasonable consumer was not expected to review the invoices.

[6]The FAC also does not provide any information as to the rates charged for approximately the first nine months variable rate Plaintiff presumably omits this information because Plaintiff was satisfied with the variable rates that he was paying at that time.

9

and competing rates. Accordingly, Plaintiff's attempt to limit the variable rate to two factors was not supported by the plain language of the Agreement. Additionally, the Agreement did not guarantee savings or competitive pricing despite Plaintiff's assumption otherwise. Opinion at 12-14. Plaintiff alleges in the FAC that Defendant breached the Agreement because it failed to charge variable rates as provided for in § 4 of the Agreement. In the FAC, Plaintiff essentially makes the same arguments that the Court previously found deficient.[7] Accordingly, Plaintiff fails to state a breach of contract claim.

For the foregoing reasons, Count II is dismissed.

### c. The Implied Covenant of Good Faith and Fair Dealing

In dismissing the implied covenant claim in the initial Complaint, the Court determined that Plaintiff failed to plausibly allege bad faith. Opinion at 15-16. In the FAC, Plaintiff alleges that Defendant breached the implied covenant "by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff['s] . . . reasonable expectation of a market-based variable rate." FAC ¶ 84.

The implied covenant of good faith and fair dealing is a "component of every contract that requires both parties to a contract act in 'good faith[,]'" that is, they must "adher[e] to 'community standards of decency, fairness, or reasonableness.'" *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109 (2007) (internal citations omitted). Good faith "requires a party to refrain from 'destroying or injuring the right of the other party to receive its contractual benefits.'" *Id.* at 110 (citation

---

[7] Plaintiff also argues that N.J.A.C. 14:4-7.6(b) requires Constellation to provide "a clear and unambiguous statement of the precise mechanism or formula by which the price will be determined." Plaintiff maintains, therefore, that Constellation was precluded from using factors other than "electricity market pricing, transmission costs, utility charges and other market related factors" when setting its monthly rate. Plf. Opp. at 16. As discussed, Plaintiff cannot amend the FAC through his brief.

10

omitted). When a party has the right to exercise discretion under a contract, the discretion must not be used "arbitrarily, unreasonably, or capriciously." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage . . . are of no legal significance.").

However, "a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." *Urbino*, 2015 WL 4510201, at *6 (internal citations omitted). Although a court may infer that a defendant acted with a bad motive, a plaintiff must provide factual support that would allow the Court to draw such a conclusion. *See Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *7 (D.N.J. Sept. 21, 2010) ("Without such factual content, the Court is unable to draw the reasonable inference that Defendants had a bad motive in exercising their discretionary price-making authority.") (internal quotation marks omitted). Examples of bad faith conduct that supports an implied covenant claim are (1) purposefully hiding vital information to ensure that the plaintiff continued to perform under the contract even though the defendant knew it was going to terminate the plaintiff's exclusive distributorship arrangement, *Bak-A-Lum Corp. v. Alcoa Building Prods.*, 69 N.J. 123 (1976); and (2) deliberately evading the plaintiff after the plaintiff notified the defendant that it intended to exercise its option to purchase a lease, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210, 229 (2005).

Here, Plaintiff fails to provide sufficient factual allegations demonstrating that Constellation acted with bad faith in setting its variable monthly rate. First, Plaintiff's "reasonable expectation of a market-based variable rate" is not supported by the clear terms of the Agreement. As discussed, the Agreement does not indicate that Constellation's pricing would be competitive

11

or that it would result in savings to Plaintiff. Second, contrary to hiding information, PSE&G's monthly rates were disclosed on Plaintiff's energy bills. FAC ¶ 29. Third, as discussed, Plaintiff's argument that Constellation acted in bad faith because it engaged in a bait-and-switch scheme (Plf's Mar. 28, 2019 Response to Def's Notice of Supp. Auth. at 5-6, D.E. 46) is not supported by the allegations in the FAC and the Agreement. As a result, Plaintiff fails to plead facts sufficient to demonstrate the Constellation acted with bad faith.

Count III, therefore, is also dismissed.

### IV. Conclusion

For the reasons stated above, Defendant's motion is granted, and the First Amended Complaint is dismissed. The Court is concerned that any future attempt to amend would be futile. However, because Plaintiff has raised a new theory of liability in its brief as to N.J.A.C. 14:4-7.6(b), the Court will give Plaintiff one additional opportunity to amend. The Court is not indicating that Plaintiff's argument as to N.J.A.C. 14:4-7.6(b) is meritorious; instead, the Court merely notes that assertion does not appear to be frivolous on its face. As a result, the Court is granting Plaintiff thirty (30) days to file a second amended complaint. If Plaintiff fails to file a second amended complaint within that time, the dismissal will be with prejudice. An appropriate Order accompanies this Opinion.

Dated: August 27, 2019

_____
John Michael Vazquez, U.S.D.J.